UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

United States District Court
Northern District of California

JOSEPH RYAN,

Plaintiff,

v.

SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, et al.,

Defendants.

Case No. 16-CV-04032-LHK

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 41

Plaintiff Joseph Ryan ("Plaintiff") sues Defendants Santa Clara Valley Transportation Authority ("SCVTA") and Joseph Fabela ("Fabela") (collectively, "Defendants"). ECF No. 37. Before the Court is Defendants' motion to dismiss. ECF No. 41 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

SCVTA "is an independent special district agency that provides" public transportation services in Santa Clara County, California. ECF No. 37 (Second Amended Complaint, or "SAC"), ¶¶ 10, 23. Fabela is the General Counsel for SCVTA. *Id.* ¶ 8. Plaintiff was employed at SCVTA

United States District Court
Northern District of California

in the position of Senior Assistant Counsel. *Id.* ¶ 23.

SCVTA also employed an individual named David Terrazas ("Terrazas"). *Id.* ¶ 26. Plaintiff "complained to management" during his time at SCVTA "that Terrazas was incompetent." *Id.* According to the SAC, "[t]he fact that Terrazas was a poor performer was widely known by management and recognized by [Fabela] and legal staff" at SCVTA. *Id.*

Terrazas was also a member of the Santa Cruz City Council. *Id.* ¶ 27. In June 2014, Plaintiff "published for one day an internet webpage entitled 'Anyone But Terrazas For City Council.'" *Id.*¶¶ 28, 45. Plaintiff published this on his Facebook page. *Id.* ¶ 41. Plaintiff's posting was "critical of Terrazas' campaign for re-election to City Council in 2014," and Plaintiff "cite[d] some misrepresentations listed on Terrazas' campaign web page, including the misrepresentation that Terrazas was a 'Transportation Manager,' rather than the true fact that he was a 'Labor Relations Supervisor'" at SCVTA. *Id.* ¶ 28. Plaintiff alleges that Plaintiff made the speech "on his own time, at night after working hours, using his own computer equipment." *Id.* ¶¶ 29, 43.

In February 2015, Terrazas alleged that SCVTA and Plaintiff "retaliated against Terrazas for whistleblower activity." *Id.* ¶ 26–27. The SAC does not identify Terrazas's "whistleblower activity," or how Terrazas was retaliated against.

Also in February 2015, Plaintiff informed Fabela that Plaintiff had made the webpage posting about Terrazas in June 2014. *Id.* ¶ 29. Fabela "was provided with a printout of the webpage." *Id*. Plaintiff "informed [Fabela] that the webpage was protected off-duty political activity." *Id.* Fabela did not take any action against Plaintiff at that time.

On June 3, 2015, Terrazas entered into a settlement agreement with SCVTA regarding the retaliation that Terrazas allegedly suffered. *Id.* ¶ 30. Nuria Fernandez ("Fernandez"), the General Manager of SCVTA, signed the settlement agreement with Terrazas on June 5, 2015. *Id.*

That same day, June 5, 2015, Fabela "informed [Plaintiff] that he would be terminated by [SCVTA] or that he could retire, but that [Plaintiff] must leave the office that day." *Id.* ¶ 31. "When [Plaintiff] asked [Fabela] why" he was being terminated, Fabela "replied that the action

was taken for reasons previously discussed, referring to the previous discussion regarding Mr. Ryan's aforementioned webpage." *Id.* ¶ 31.

The SAC further alleges that Plaintiff is Caucasian, over the age of 40, and that he "suffered from a medical condition" during his employment that "substantially limited his ability to sleep, walk, stand, lift, bend, concentrate, tolerate substandard performance by coworkers and perform manual tasks at work and at home." *Id.* ¶ 33–34.

**B. Procedural History**

Plaintiff filed suit on July 18, 2016, against SCVTA, Fabela, and Fernandez. ECF No. 1. Plaintiff's complaint alleged 22 causes of action against Defendants, including claims under 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and violations of California state law. *See id.*

On September 29, 2016, the parties filed a stipulation regarding Plaintiff's filing of a First Amended Complaint. ECF No. 18. Specifically, the parties agreed that Plaintiff would dismiss Fernandez with prejudice, that Plaintiff would "[r]emove any and all allegations that Plaintiff was entitled to a 'Skelly' hearing, and that [SCVTA]'s failure to provide Plaintiff a 'Skelly' hearing constituted a due process violation." *Id.* Plaintiff also stipulated to dismiss the Complaint's twentieth cause of action. *Id.* The Court entered an Order granting the parties' stipulation on September 30, 2016. ECF No. 19.

On October 17, 2016, Plaintiff filed a First Amended Complaint. ECF No. 26. On that same day, Plaintiff filed a notice of voluntary dismissal of Fernandez, ECF No. 27, which this Court granted on October 19, 2016, ECF No. 29.

On November 9, 2016, the parties filed a stipulation regarding Plaintiff's filing of a SAC, ECF No. 32, which the Court granted that same day, ECF No. 34.

On December 14, 2016, Plaintiff filed the SAC. The SAC alleged 13 causes of action against Defendants, including claims under § 1983 for violation of Plaintiff's First Amendment rights, claims under § 1983 for violation of Plaintiff's Fourteenth Amendment rights, claims under

United States District Court
Northern District of California

Title VII and FEHA for racial discrimination and retaliation, claims under the ADEA and California's Fair Housing and Employment Act ("FEHA") for age discrimination, claims under the ADA and FEHA for disability discrimination, and a claim for violation of California Government Code § 3202.

On January 13, 2017, Defendants filed a motion to dismiss the SAC or, in the alternative, a motion for more definite statement or a motion to strike. ECF No. 41 ("Mot."). On January 27, 2017, Plaintiff filed an opposition and a request for judicial notice. ECF Nos. 47 & 48. On February 3, 2017, Defendants filed a Reply, a request for judicial notice, and oppositions to Plaintiff's request for judicial notice. ECF Nos. 49, 50, 51.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

United States District Court
Northern District of California

**B. Leave to Amend**

If the Court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Defendants move to dismiss all 13 claims raised in the SAC. Plaintiff's claims may be grouped into the following categories: (1) claims under § 1983 for violation of the First Amendment; (2) a claim under California Government Code § 3203; (3) claims under § 1983 for violation of the Fourteenth Amendment; (4) claims for racial discrimination; (5) claims for age discrimination; (6) claims for disability discrimination; and (7) claims for retaliation for reporting racial discrimination. Defendant also moves to dismiss Plaintiff's request for punitive damages. The Court addresses each of Defendants' arguments below in turn.

**A. Section 1983 Claims for Violation of the First Amendment**

Counts One and Two of Plaintiff's SAC allege that Defendants violated § 1983 by terminating Plaintiff in retaliation for Plaintiff's exercise of his First Amendment right to free speech.[1] SAC ¶¶ 36–74. Plaintiff brings a claim against Fabela in his individual capacity, and a

[1] The distinction between Plaintiff's claims in Counts One and Two is unclear. Count One is brought against SCVTA and Fabela in his individual capacity and is titled "Illegal Intrusion on First Amendment Right to Free Speech." Count Two is brought against only SCVTA and is titled "Retaliation for Exercising Free Speech *Monell* Action." However, the allegations in each count refer to the same conduct, and both Defendants and Plaintiff analyze these claims the same way. Accordingly, the Court construes both Counts One and Two as First Amendment retaliation

claim against SCVTA based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* The Court first considers Plaintiff's claim against Fabela, and then the Court considers Plaintiff's § 1983 claim against SCVTA under *Monell*.

**1. Claim against Fabela in his Individual Capacity**

Count One of Plaintiff's SAC alleges that Fabela violated the First Amendment by terminating Plaintiff in retaliation for Plaintiff posting the "Anyone But Terrazas For City Council" webpage. SAC ¶ 47. According to Defendants, Plaintiff's claim against Fabela must be dismissed because Plaintiff has failed to plausibly allege a First Amendment retaliation claim. Mot. at 5–13. Defendants also assert that Fabela is entitled to qualified immunity. *Id.* at 17. The Court first addresses whether Plaintiff has stated a plausible claim against Fabela for First Amendment retaliation, and then the Court considers whether Fabela is entitled to qualified immunity.

**a. Whether Plaintiff has Stated a Plausible Claim against Fabela for First Amendment Retaliation**

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). The Ninth Circuit "follow[s] a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013). "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Id.* (quoting *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (internal quotation marks and citations omitted). "Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse

claims under § 1983, with Count One alleged against Fabela in his individual capacity and Count Two alleged against SCVTA under a *Monell* theory of liability.

United States District Court
Northern District of California

United States District Court
Northern District of California

employment action even absent the protected speech." *Id.*

Defendants argue that Plaintiff has failed to allege the first three steps of this inquiry: that Plaintiff "spoke on a matter of public concern," that Plaintiff "spoke as a private citizen," or that Plaintiff's "protected speech was a substantial or motivating factor" in Plaintiff's termination. *Ellins*, 710 F.3d at 1056; *see* Mot. at 6–13. The Court considers each of these steps below.

**i. Matter of Public Concern**

The Court first considers whether Plaintiff has adequately alleged that Plaintiff's "Anyone But Terrazas For City Council" webpage "spoke on a matter of public concern." *Ellins*, 710 F.3d at 1056. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). By contrast, when a public employee speaks "upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

The Ninth Circuit has recognized that "[t]he scope of the public concern element is defined broadly in recognition that one of the fundamental purposes of the first amendment is to permit the public to decide for itself which issues and viewpoints merit its concern." *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 978 (9th Cir. 2002). "It is only 'when it is clear that . . . the information would be of *no* relevance to the public's evaluation of the performance of governmental agencies' that speech of government employees receives no protection under the First Amendment." *Id.* (quoting *Pool v. VanRheen*, 297 F.3d 899, 907 (9th Cir. 2002)). The Ninth Circuit has found that speech is not of public concern where it reflects "the minutiae of workplace grievances," *Havekost v. U.S. Dep't of Navy*, 925 F.2d 316, 319 (9th Cir. 1991), or "individual personnel disputes." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). In determining whether speech addresses a matter of public concern, the Court must look to "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. For the reasons discussed below, the Court finds that the alleged "content, form,

7

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

and context" of Plaintiff's speech plausibly suggest that Plaintiff spoke on a matter of public concern. *See id.*

First, the Court considers the alleged "content" of Plaintiff's speech. Plaintiff alleges that he posted a webpage entitled "Anyone But Terrazas For City Council," that was "critical of Terrazas' campaign for re-election to City Council." SAC ¶ 28. Plaintiff further alleges that he "cit[ed] some misrepresentations listed on Terrazas' campaign web page, including the misrepresentation that Terrazas was a 'Transportation Manager,' rather than the true fact that he was a 'Labor Relations Supervisor.'" *Id.* This alleged "content," which was about a local candidate's campaign for public office, plausibly suggests that Plaintiff spoke on a "matter of political, social, or other concern to the community." *See Johnson*, 48 F.3d at 422 (internal quotation marks omitted); *Wiggins v. Lowndes Cty., Miss.*, 363 F.3d 387, 390 (5th Cir. 2004) ("Political speech regarding a public election lies at the core of matters of public concern protected by the First Amendment.").

Second, the Court considers the alleged "form" and "context" of Plaintiff's speech. "The relevant inquiry is the point of the speech in question." *Lopez v. City & Cty. of San Francisco*, 2014 WL 2943417, at *6 (N.D. Cal. June 30, 2014) (citing *Roth v. Veteran's Admin. of U.S.*, 856 F.2d 1401, 1406 (9th Cir. 1988)). Here, Plaintiff alleges that Plaintiff posted the webpage on a public forum, the internet, "to shed light on the candidate's wrongdoing for the public." *Id.* ¶ 41. Moreover, Plaintiff alleges that his speech was intended to be "about a candidate running for public office." *Id.* Taken as true, these allegations are sufficient to raise the plausible inference that Plaintiff intended to speak "out of concern for the public" in posting the webpage. *Lopez*, 2014 WL 2943417, at *6.

Defendants assert that Plaintiff's speech was not a matter of public concern because Plaintiff's webpage "was nothing more than petty nit-picking on an insignificant detail spawned by a difference in personal opinion regarding verbiage of position titles." Mot. at 14. According to Defendants, "this is a case of Plaintiff airing frivolous, personal remarks" that "grew from some deep-rooted personal gripe against" Terrazas. *Id.* However, on a motion to dismiss, the Court

United States District Court
Northern District of California

must take the facts alleged in the SAC as true, and the Court must construe the allegations "in the light most favorable to" Plaintiff. *Manzarek*, 519 F.3d at 1031. Although the "whole record" may ultimately reveal that Plaintiff's speech was indeed addressing a "workplace grievance[]," rather than a "matter of public concern," *Connick*, 461 U.S. at 147–48, that is not the inquiry on a motion to dismiss the complaint. On a motion to dismiss, the Court must determine only whether Plaintiff has pled facts that, taken as true, "support the reasonable inference that" Plaintiff spoke on a matter of public concern. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). As stated above, the Court finds that the SAC plausibly alleges that Plaintiff's "Anyone But Terrazas For City Council" webpage addressed a matter of public concern.

**ii. Private Citizen or Public Employee**

Second, the Court must determine whether Plaintiff has plausibly alleged that he spoke as a private citizen, rather than as a public employee. "A public employee speaks as a private citizen where []he has 'no official duty' to make the statements at issue—that is, where the statements were 'not part of performing the tasks the employee [is] paid to perform.'" *La v. San Mateo Cty.*, 2014 WL 6682476, at *9 (N.D. Cal. Nov. 25, 2014) (quoting *Eng. v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)). "The Ninth Circuit has identified a non-exhaustive list of three 'guiding principles'" to follow in making this "practical, fact-specific inquiry." *Id.* (quoting *Dahlia*, 735 F.3d at 1071, 1074–75). "First, 'whether or not the employee has confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor.'" *Id.* (quoting *Dahlia*, 735 F.3d at 1074–75). "Second, 'the subject matter of the communication is . . . highly relevant'" in determining whether an individual spoke as a public employee or as a private citizen." *Id.* "A public employee's 'routine report, pursuant to normal departmental procedure, about a particular incident or occurrence . . . is typically within [the employee's] job duties.'" *Id.* (quoting *Dahlia*, 735 F.3d at 1075). "Third, 'when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties.'" *Id.*

Given these factors, the Court concludes that Plaintiff "has alleged facts that give rise to the plausible inference that [Plaintiff] spoke as a private citizen," rather than as a public employee.

9

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

*Id.* Plaintiff was Senior Assistant Counsel at SCVTA. SAC ¶ 42–43. In this role, Plaintiff's "typical tasks" involved litigating court cases, advising SCVTA staff, and reviewing internal SCVTA policies and procedures. *Id.* Accordingly, Plaintiff has plausibly alleged that Plaintiff's posting of a webpage about a local candidate for City Council was not "part of performing the tasks" that Plaintiff was "paid to perform." *Eng*, 552 F.3d at 1071. Indeed, Plaintiff alleges that he posted the webpage on the internet via his own Facebook page, and that Plaintiff did so on his own time with his own computer. *Id.* ¶¶ 28, 43. Plaintiff's speech was not a "routine report, pursuant to normal departmental procedures," nor was Plaintiff's speech made within Plaintiff's "chain of command." *See Dahlia*, 735 F.3d at 1074–75. This further supports the inference that Plaintiff was speaking as a private citizen, rather than as a public employee. *La*, 2014 WL 6682476, at *9 ("That La plausibly complained 'outside of [her] chain of command' weighs heavily in her favor."). Thus, "viewed in the light most favorable to [Plaintiff], Plaintiff has plausibly alleged that Plaintiff "was voicing general concerns" as a private citizen about Terrazas's campaign for City Council, rather than speaking as a public employee pursuant to his official duties at SCVTA. *Id.* at *10.

Defendants assert that Plaintiff was speaking as a public employee because Plaintiff's knowledge of "Terrazas' function/role as a public employee is plainly the by-product of Plaintiff's working relationship with Terrazas within the [SC]VTA." Mot. at 17. However, even assuming that this is true, the "public employee" inquiry does not focus on the source of Plaintiff's knowledge about the subject matter of the speech. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("The memo concerned the subject matter of Ceballos' employment, but this, too, is nondispositive."); *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1212 (E.D. Cal. May 19, 2009) (rejecting argument that a plaintiff, who was a Public Works Director and who spoke publicly about well water contamination, spoke as a public employee rather than a private citizen merely because the plaintiff's speech "concerned the subject matter of his employment"). Rather, the relevant question is whether Plaintiff's speech was "the product of performing the tasks [Plaintiff] was paid to perform." *Eng*, 552 F.3d at 1071 (internal quotation marks omitted). As

10
Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

discussed above, Plaintiff has plausibly alleged that his posting of the webpage "Anyone But Terrazas For City Council" was not made pursuant to his duties as Senior Assistant Council, but that it was rather made in Plaintiff's capacity as a private citizen. Thus, Plaintiff has adequately alleged that he spoke as a private citizen sufficient to withstand a motion to dismiss.[2]

**iii. Substantial or Motivating Factor**

Finally, the Court considers whether Plaintiff has plausibly alleged that his speech was a "substantial or motivating factor" for his termination. As the Ninth Circuit has explained, an employer's intent "can be demonstrated either through direct or circumstantial evidence." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300–01 (9th Cir. 1999). "[A] plaintiff may introduce evidence that (1) the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) the employer expressed opposition to the speech, either to the speaker or to others; or (3) the proffered explanations for the adverse action were false and pretextual. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003)).

Here, Plaintiff alleges that in February 2015, Plaintiff informed Fabela about "Anyone But Terrazas For City Council" webpage, and that Plaintiff provided Fabela with a printout of the webpage. SAC ¶ 29. Plaintiff alleges that he was terminated on June 5, 2015, the same day that Terazzas signed a settlement agreement with SCVTA. *Id.* ¶ 30. Plaintiff alleges that Fabela specifically told Plaintiff on the day that Plaintiff was fired "that the action was taken for reasons previously discussed, referring to the previous discussion regarding Mr. Ryan's aforementioned webpage." *Id.* ¶ 31. "Construing the allegations in the light most favorable to" Plaintiff, as the Court must on a motion to dismiss, *Dahlia*, 735 F.3d at 1079, the Court finds that Plaintiff has plausibly alleged that Plaintiff's speech was a "substantial or motivating factor" in Fabela's

---

[2] Plaintiff requests judicial notice of job descriptions listed on the SCVTA website, in addition to a website screenshot that shows Terrazas' job position as "Labor Relations Program Manager," in order to show that this information was publicly available. *See* ECF No. 48. Defendants oppose judicial notice of these websites. ECF No. 51. The Court declines to take judicial notice of these websites "because these exhibits are not necessary to this decision." *In re Leapfrog Enterp., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 992 (N.D. Cal. Aug. 2, 2012).

United States District Court
Northern District of California

decision to terminate Plaintiff. *See Allford v. Barton*, 2015 WL 2455138, at *17 (E.D. Cal. May 22, 2015) (finding plaintiff plausibly alleged his speech was a substantial or motivating factor where approximately 12 months had elapsed between Plaintiff's speech and the adverse employment action, and Plaintiff alleged the Defendants "were subjectively motivated by their personal political interests to retaliate against Plaintiff").

Defendants argue that the gap in time between when Plaintiff informed Fabela of his speech, February 2015, and when Fabela terminated Plaintiff, June 2015, is too large to plausibly suggest that Plaintiff was fired because of his speech. Mot. at 19–20. However, a four month gap is within the range of time that the Ninth Circuit has found sufficient to support an inference of retaliation. *See, e.g.*, *Coszalter*, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Allen v. Iranon*, 283 F. 3d 1070, 1078 (9th Cir. 2002) ("[A]n eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory."). Moreover, the Ninth Circuit has cautioned that "a specified time period cannot be a mechanically applied criterion." *Coszalter*, 320 F.3d at 977. Rather, determining "[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in light of the timing and the surrounding circumstances." *Id.*

Given that a four month gap in time is "within the range that has been found to support an inference that an employment decision was retaliatory," and given that Plaintiff alleges that Fabela "refer[ed]" to Plaintiff's protected speech in terminating Plaintiff, SAC ¶ 31, the Court finds that Plaintiff has plausibly alleged that his protected speech was a "substantial or motivating" factor in his termination sufficient to withstand a motion to dismiss. *See Allen*, 283 F.3d at 1078.

**iii. Summary**

In sum, taking the facts alleged in the complaint as true and construing the allegations in the light most favorable to Plaintiff, Plaintiff has plausibly alleged that he spoke on a matter of public concern, that Plaintiff spoke as a private citizen, and that Plaintiff's speech was a substantial or motivating factor in Fabela's decision to terminate Plaintiff. Accordingly, Plaintiff

United States District Court
Northern District of California

has stated a plausible claim for relief sufficient to withstand a motion to dismiss. The Court next turns to consider whether Plaintiff's First Amendment retaliation claim against Fabela must be dismissed because Fabela is entitled to qualified immunity.

**b. Whether Fabela is Entitled to Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether a government official is entitled to qualified immunity, we ask two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct." *Ellins*, 710 F.3d at 1064.

"In assessing a qualified immunity defense on a motion to dismiss, a court must 'regard all of the allegations in [the] complaint as true.'" *Hernandez v. City of San Jose*, 2017 WL 977047, at *11 (N.D. Cal. Mar. 14, 2017) (quoting *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). "A court should deny a motion to dismiss on the basis of qualified immunity if the complaint 'allege[s] acts to which qualified immunity may not apply.'" *Id.* (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). "Under this standard, in many cases it is impossible to determine based on a complaint alone that qualified immunity is warranted." *Id.* In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue 'at summary judgment or at trial.'" *Id.* (quoting *Morley*, 175 F.3d at 761).

Defendants argue that Fabela is entitled to qualified immunity because Plaintiff has not adequately alleged that Fabela violated a clearly established right of Plaintiff. Mot. at 24–25. According to Defendants, whether an employer is liable for First Amendment retaliation depends on balancing the specific facts involved in a particular case, and thus the right can "rarely be considered 'clearly established.'" *Id.* at 26 (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)). However, on a motion to dismiss the Court must take the allegations in the SAC as

13

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

true and the Court must construe the allegations "in the light most favorable to" Plaintiff. *Manzarek*, 519 F.3d at 1031. As set forth above, Plaintiff has sufficiently alleged that Fabela violated Plaintiff's First Amendment rights by terminating Plaintiff in retaliation for Plaintiff's protected speech. The right to be free from termination in retaliation for protected speech was "clearly established at the time" that Fabela terminated Plaintiff in 2015. *Ellins*, 710 F.3d at 1064. "[I]n 1968, the [United States] Supreme Court established that public employees have a First Amendment right to be free from retaliation for commenting on matters of public concern." *Id.* at 1065 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)). Moreover, the Ninth Circuit "articulat[ed] a deterrent effect test for First Amendment retaliation cases[] in 1987." *Coszalter*, 320 F.3d at 979 (citing *Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987)). Accordingly, "at the time [Fabela] acted, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established." *Id.* at 979; *see also O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) ("A reasonable official in defendants' shoes would thus have known that taking disciplinary action against [plaintiff] in retaliation for the expression of his views violated his First Amendment rights.").

Thus, the Court DENIES without prejudice Defendants' motion to dismiss Plaintiff's § 1983 claim against Fabela for First Amendment retaliation. "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien*, 818 F.3d at 936.

**2. *Monell* Liability for SCVTA**

Plaintiff alleges in Count Two a § 1983 claim against SCVTA for First Amendment retaliation. SAC ¶¶ 57–58. Under § 1983, a local government may not be sued under a theory of respondeat superior for injuries inflicted by its employees or agents. *Monell*, 436 U.S. at 690–91. However, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690–91. Specifically, under *Monell*, a plaintiff

United States District Court
Northern District of California

may establish municipal liability by demonstrating that "(1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; [] (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate," *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotations marks omitted); or (4) "in limited circumstances," the failure to train municipal employees can serve as the policy underlying a *Monell* claim." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

Plaintiff argues that SCVTA is liable for Fabela's actions because: (1) Fabela's actions were pursuant to "a longstanding practice or custom" of SCVTA; (2) SCVTA failed to properly train its employees; and (3) Fabela acted as a "final policymaker." Opp. at 21–22. The Court considers each of these in turn below.

**a. Longstanding Practice or Custom**

First, the Court considers whether Plaintiff has adequately alleged that SCVTA had a "longstanding practice or custom" such that it is liable under *Monell*. *Price*, 513 F.3d at 966. To allege *Monell* liability based on a "custom" or "practice," liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff has not adequately alleged an official custom or practice of SCVTA to hold SCVTA liable under *Monell*. Specifically, Plaintiff has not pled "any facts that indicate that the [SCVTA] is regularly taking actions" that involve retaliating against employees for exercising their First Amendment rights. *See Bagley v. City of Sunnyvale*, 2017 WL 344998, at *15 (N.D. Cal. Jan. 24, 2017). Rather, Plaintiff alleges only a single incident: his own termination. This is not sufficient to show that Fabela's actions were "founded upon practices of sufficient duration, frequency, and consistency such that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *see Bagley*, 2017 WL 344998, at *15 (rejecting *Monell* claim

15

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

based on "practice" or "custom" theory where "Plaintiff only [pled] actions related to his own arrest and prosecution").

Moreover, Plaintiff's allegation of SCVTA's practices and customs are wholly conclusory recitations of the elements of *Monell* liability. For example, Plaintiff alleges that "Defendants' actions and failures as alleged herein constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States . . . Defendants, while acting under color of state authority and law, wrongfully and intentionally retaliated against [Plaintiff] for his participation in statutorily protected activity." SAC ¶ 68. Under Ninth Circuit law, conclusory allegations of a municipality's customs or practices are not sufficient to establish *Monell* liability under federal pleading standards. *La v. San Mateo Cty. Transit Dist.*, 2014 WL 4632224, at *7 (N.D. Cal. Sept. 16, 2014) ("The Ninth Circuit has made clear that claims of *Monell* liability must now comply with the basic principles set forth in *Twombly* and *Iqbal* . . . the complaint may not simply recite the elements of a cause of action" (internal quotation marks omitted)). Accordingly, for this additional reason, Plaintiff has failed to adequately allege a "longstanding practice or custom" such that SCVTA may be held liable under *Monell* for Fabela's actions. *See A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 366–37 (9th Cir. 2012) (dismissing *Monell* claim because Plaintiff merely alleged that the officer "performed all acts and omissions . . . under the ordinances, regulations, customs, and practices of [the county]" and the county "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" alleged in the complaint); *Bagley*, 2017 WL 344998, at *16 (dismissing *Monell* claim for excessive force where the Plaintiff alleged conclusively that the City "ha[d] a policy '[t]o use or tolerate the use of excessive and/or unjustified force").

**b. Inadequate Training**

Plaintiff also alleges that SCVTA is liable pursuant to *Monell* under a "failure to train" theory. Opp. at 22. "[A] municipality's failure to train its employees may create § 1983 liability where the 'failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1148 (E.D.

Cal. 2009). However, as with Plaintiff's "practice or custom" theory discussed above, the factual allegations in Plaintiff's SAC regarding SCVTA's "failure to train" are wholly conclusory recitations of the elements of *Monell* liability, which is insufficient under *Twombly* and *Iqbal*. *La*, 2014 WL 4632224, at *7. Specifically, Plaintiff alleges only that "[t]he training policies of [SCVTA] were not adequate to train or supervise its employees to handle the usual and recurring situations with which they must deal," and that SCVTA "knew that its failure to train or supervise adequately made it highly predictable that its employees would engage in conduct that would deprive persons such as [Plaintiff] of his rights." SAC ¶¶ 65–66. These conclusive allegations "do[] not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiff's harm." *Young*, 687 F. Supp. 2d at 1149. Accordingly, Plaintiff has insufficiently alleged a "failure to train" theory of *Monell* liability.

**c. Final Policymaker**

Finally, Plaintiff alleges that SCVTA is liable pursuant to *Monell* under a "final policymaker" theory. Opp. at 22. A plaintiff may allege a *Monell* claim by "establish[ing] that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official government policy." *Palm v. Los Angeles Dep't of Water & Power*, 2015 WL 4065087, at *3 (C.D. Cal. July 2, 2015) (quoting *Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001)). However, "the fact that a city employee has a level of independent decision-making power does not render him a final policymaker for purposes of municipal liability." *Lopez v. City and Cty. of San Francisco*, 2014 WL 2943417, at *14 (N.D. Cal. June 30, 2014). "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of supervisors." *Zofragos v. City & Cty. of San Francisco*, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006); *see also Lopez*, 2014 WL 2943417, at *14 ("For municipal liability to attach, 'the official who commits the alleged violation of the plaintiff's rights [must have] authority that is final in the special sense that

United States District Court
Northern District of California

there is no higher authority.'" (quoting *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F. 3d 464, 469 (7th Cir. 2001)).

Plaintiff has not alleged sufficient facts to hold SCVTA liable under a "final policymaker" theory of *Monell* liability. Plaintiff's SAC alleges only conclusively that "[w]hen Defendants Fabela and Fernandez[3] engaged in these acts, they were acting as a final policymaker for [SCVTA]." SAC ¶ 81. As stated above, conclusive recitations of a *Monell* claim are not sufficient under *Twombly* and *Iqbal*. *La*, 2014 WL 4632224, at *7; *see also Yadin Co. v. City of Peoria*, 2008 WL 906730, at *5 (D. Ariz. Mar. 25, 2008) (dismissing *Monell* claim where the allegations were "simply conclusions for purposes of *Twombly* as there [were] no facts alleged showing that [Defendant] was in fact a final policymaker" for the city). Plaintiff's SAC contains no factual allegations to show that Fabela—who was General Counsel for SCVTA—was a "final authority on matters of employment policy" at SCVTA such that he was a "final policymaker" within the meaning of *Monell*. *Ulrich*, 308 F.3d at 985; *see Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1178 (E.D. Cal. July 15, 2005) ("Plaintiff's allegations of decision-making and policy-making authority are conclusory and insufficient."). Accordingly, Plaintiff has failed to plausibly allege a "final policymaker" theory of *Monell* liability.

**d. Summary**

In sum, Plaintiff has failed to sufficiently allege that Fabela's alleged unlawful conduct was the result of a longstanding practice or custom of SCVTA, was the result of SCVTA's failure to train municipal employees, or that Fabela was a final policymaker within the meaning of *Monell*. Accordingly, Plaintiff has failed to allege a theory of *Monell* liability against SCVTA sufficient to hold SCTVA liable for Fabela's conduct. The Court GRANTS Defendants' Plaintiff's § 1983 claim against SCVTA for First Amendment retaliation. The Court provides leave to amend because Plaintiff may be able to allege facts to support a theory of *Monell* liability.

[3] Plaintiff dismissed with prejudice Fernandez as a defendant on October 19, 2016. ECF No. 29. Thus, Plaintiff must strike all references to Fernandez as a defendant and all allegations that Fernandez violated the law.

**B. California Government Code § 3203**

Count Nine of the SAC alleges a cause of action under California Government Code § 3203. California Government Code § 3203 provides that "[e]xcept as otherwise provided in this chapter, or as necessary to meet requirements of federal law as it pertains to a particular employee or employees, no restriction shall be placed on the political activities of any officer or employee of a state or local agency." Cal. Gov't Code § 3203.

Defendants assert that "[t]he § 3203 claim should be dismissed for the same reasons the § 1983 claims [First Amendment retaliation claims] should be dismissed," and Defendants "incorporate by reference" Defendants' arguments that Plaintiff did not speak on a matter of public concern, that Plaintiff did not speak as a private citizen, and that Plaintiff's speech was not a "substantial or motivating" factor for Defendants' decision to terminate Plaintiff. *See* Mot. at 27. However, as discussed above, the Court finds that Plaintiff has adequately alleged that Plaintiff's "Anyone But Terrazas For City Council" webpage spoke on a matter of public concern, that Plaintiff did not make the speech in Plaintiff's role as Senior Assistant Counsel at SCVTA, and that Fabela terminated Plaintiff in retaliation for Plaintiff's speech. *See supra* Section III.A.1. Defendants do not cite any California specific case law regarding California Government Code § 3203, nor do Defendants raise any defenses that are specific to this statute.[4] Accordingly, for the reasons discussed above regarding Plaintiffs' § 1983 First Amendment retaliation claim against Fabela, the Court DENIES Defendants' motion to dismiss Plaintiff's claim under California Government Code § 3203.

**C. Section 1983 Claims for Violation of Plaintiff's Fourteenth Amendment Rights**

---

[4] California case law interpreting California Government Code § 3203 is limited. The Court notes that a district court in this Circuit, on a motion for summary judgment, recently expressed doubt that California Government Code § 3203 "provide[d] a cause of action for retaliation for the exercise of one's First Amendment rights." *Maner v. Cty. of Stanislaus*, 2016 WL 4011722, at *15 (E.D. Cal. July 27, 2016). However, Defendants do not raise this issue in their motion to dismiss. Indeed, neither party cites any cases interpreting California Government Code § 3203. Accordingly, at this stage of the proceedings, and based on the arguments raised in Defendants' motion to dismiss, the Court will not dismiss at this time Plaintiff's claim under California Government Code § 3203.

Counts Three and Four of the SAC allege a § 1983 claim against SCVTA for violation of Plaintiff's Fourteenth Amendment rights. Specifically, Count Three alleges that SCVTA violated Plaintiff's Fourteenth Amendment "Property and Equal Protection," SAC ¶ 79, and Count Four alleges that SCVTA violated Plaintiff's Fourteenth Amendment right to due process. *Id.* ¶ 99.

As an initial matter, Plaintiff brings Counts Three and Four only against SCVTA under a theory of *Monell* liability, but Plaintiff has not sufficiently alleged any theory of *Monell* liability such that SCVTA may be held liable for its employees' conduct. As stated above with regards to Plaintiff's First Amendment retaliation claim against SCVTA, Plaintiff's SAC alleges only conclusive assertions regarding SCVTA's practices and customs, failure to train, and Fabela's policymaking authority. *See* SAC ¶¶ 75–120. These conclusive allegations are insufficient under federal pleading standards to state a claim of *Monell* liability. *La*, 2014 WL 4632224, at *7 ("The Ninth Circuit has made clear that claims of *Monell* liability must now comply with the basic principles set forth in *Twombly* and *Iqbal* . . . the complaint may not simply recite the elements of a cause of action" (internal quotation marks omitted)). Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' § 1983 claims in Counts Three and Four. The Court provides leave to amend because Plaintiff may be able to allege facts to support a theory of *Monell* liability.

In anticipation that Plaintiff will amend the SAC, the Court will discuss the remaining deficiencies in Plaintiff's § 1983 claims for violations of the Fourteenth Amendment. The Court first discusses Plaintiff's claim based on the Equal Protection Clause, and then discusses Plaintiff's claim based on the Due Process Clause.

**1. Fourteenth Amendment Equal Protection Clause**

First, Plaintiff alleges in Count Three that Defendants deprived Plaintiff of his rights "under the Fourteenth Amendment Right to Property and Equal Protection." SAC ¶ 79. "To state a § 1983 claim for violation of the Equal Protection Clause, 'a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Lopez*, 2014 WL 2943417, at *11 (quoting *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 686 (9th Cir. 2011)). "A plaintiff may satisfy this standard by alleging (1) that he was treated differently from others similarly situated; (2) that this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) that he suffered injury as a result of the discriminatory classification." *Id.* (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

The Court agrees with Defendants that Plaintiff's Fourteenth Amendment Equal Protection Clause claim is "vague and difficult to decipher." Mot. at 13. Plaintiff does not allege any facts in support of this claim. Rather, Plaintiff alleges only that "[t]he acts of [Defendants] deprived [Plaintiff] of his particular rights under the laws of the United States and the United States Constitution as herein set forth, and under the Fourteenth Amendment Right to Property and Equal Protection." SAC ¶ 79. The remaining allegations in support of this claim are either recitations of the elements of *Monell* liability, or are identical to Plaintiff's allegations in support of Plaintiff's First Amendment retaliation claim. *Id.* ¶¶ 75–96. These conclusive and vague allegations are insufficient to "give the defendant fair notice" of the claim against it, and these allegations fail to plausibly suggest that Defendant violated the Fourteenth Amendment. *See Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. Rule 8(a)(2)). Accordingly, for these additional reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's § 1983 claim for violation of Plaintiff's Fourteenth Amendment right to Equal Protection. The Court provides leave to amend because Plaintiff may be able to allege facts sufficient to state a claim for relief.

**2. Fourteenth Amendment Due Process Clause**

Second, Plaintiff alleges in Count Four that SCVTA violated § 1983 by violating Plaintiff's Fourteenth Amendment right to due process. "The Due Process Clause of the Fourteenth Amendment 'protects individuals against the deprivation of liberty or property by the government without due process.'" *Novoa v. City and Cty. of San Francisco*, 2015 WL 4169123, at *5 (N.D. Cal. Sept. 3, 2015) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). "A plaintiff who has been deprived of due process under color of state authority may proceed under 42 U.S.C. § 1983." *Id.* (quoting *Collins v. City of Parker Heights, Texas*, 503 U.S.

United States District Court
Northern District of California

115, 119–200 (1992)). "To establish a due process claim under § 1983, a plaintiff must show that a person acting under the color of state law deprived her of a right, privilege or immunity protected by the Constitution or federal law." *Id.* (quoting *Gomez v. Toledo*, 466 U.S. 635, 640 (1980)). "A 'procedural due process claim hinges on proof of two elements: (1) a protectable liberty or property interest; and (2) denial of adequate procedural protections." *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005)).

As with Plaintiff's Fourteenth Amendment Equal Protection claim discussed above, the allegations in support of Plaintiff's Fourteenth Amendment Due Process claim are difficult to discern. Plaintiff conclusively alleges that he was "was summarily terminated and not provided with all of his Constitutional Rights to Due Process," but Plaintiff provides no further factual detail in support of this claim. *See* SAC ¶ 100. As stated above with regards to Plaintiff's Fourteenth Amendment Equal Protection Clause claim, Plaintiff's allegations are insufficient to "give the defendant fair notice" of the claim against it, and these allegations fail to plausibly suggest that Defendant violated the Fourteenth Amendment. *See Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

In Plaintiff's opposition, Plaintiff clarifies that the SCVTA violated his procedural due process rights by firing Plaintiff without providing Plaintiff the procedures to which Plaintiff was entitled under the California Supreme Court's decision in *Skelly v. State Personnel Board*, 15 Cal. 3d 194, 215 (Cal. 1975). Pursuant to *Skelly*, a public employee is entitled to pre-termination "notice of the proposed action, the reasons thereof, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Id.* However, as Defendants correctly assert, Plaintiff stipulated on September 29, 2016, to "[r]emove any and all allegations that Plaintiff was entitled to a '*Skelly*' hearing, and that [SCVTA]'s failure to provide Plaintiff a '*Skelly*' hearing constituted a due process violation." ECF No. 18. The Court granted the parties stipulation in an Order on

22

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

September 30, 2016. ECF No. 19. [5]

Accordingly, because Plaintiff stipulated to "remove any and all allegations" that SCVTA's "failure to provide Plaintiff a '*Skelly*' hearing constituted a due process violation," and because Plaintiff raises only this basis for his Fourteenth Amendment Due Process clause claim in Plaintiff's opposition, the Court GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment Due Process clause claim. The Court grants Defendants' motion to dismiss with prejudice to the extent that Plaintiff bases his Due Process claim on Plaintiff's entitlement to a *Skelly* hearing. *See* ECF Nos. 18 & 19. However, the Court otherwise affords Plaintiff leave to amend because Plaintiff may be able to state a Due Process Clause claim that does not rely on Plaintiff's entitlement to a *Skelly* hearing.

**D. Race Discrimination Claims**

Plaintiff's Fifth and Eleventh causes of action allege that SCVTA discriminated against Plaintiff on the basis of Plaintiff's race, in violation of Title VII and FEHA, respectively. "'Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California anti-discrimination] statutes,'" and federal courts analyze "Title VII and FEHA discrimination claims together." *Haro v. Therm-X of California, Inc.*, 2015 WL 5121251, *3 (N.D. Cal. Aug. 28, 2015) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000)). "To establish a *prima facie* case for race-based discrimination under Title VII and FEHA, a plaintiff must plead that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fitch v. San Francisco Unified Sch. Dist.*, 2015 WL 6551668, at *5 (N.D. Cal. Oct. 29, 2015) (internal quotation marks omitted).

---

[5] Defendants filed a request for judicial notice that asks the Court to take judicial notice of its prior Orders in this case. ECF No. 50. "The Court need not take judicial notice of these documents because they are part of the files and records in this case, and thus are already properly before the court." *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *2 (C.D. Cal. July 14, 2014).

United States District Court
Northern District of California

Plaintiff's SAC fails to state a claim for race discrimination. Plaintiff alleges in Count Five that Plaintiff's "race, Caucasian, was a motivating factor for these adverse employment actions against him," SAC ¶ 123, and Plaintiff alleges in Count Eleven that Defendants and Terrazas "were all Hispanic," and "[a] motivating factor in Defendant's decision to terminate" Plaintiff "was his gender, race and national origin—Caucasian." *Id.* ¶ 199. Other than these broad and conclusive statements, the SAC contains no *facts* that plausibly suggest that Plaintiff was discriminated against on the basis of his race. *See Gardner v. Am. Home Mortg. Serv., Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010) ("[N]either conclusory statements nor legal conclusions are entitled to a presumption of truth."). Indeed, all of the facts alleged in the SAC concern Plaintiff's posting of the "Anyone But Terrazas For City Council" webpage, and Fabela's firing of Plaintiff in reference to that webpage. *See* SAC ¶ 31. Accordingly, Plaintiff's SAC fails to plead facts that plausibly "give rise to an inference of discrimination" sufficient to state a claim for racial discrimination. *Fitch*, 2015 WL 6551668, at *5.

In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff asserts that he was "verbally critiqued, belittled and criticized by Fabela and other [sic] of his Hispanic colleagues." Opp. at 25. Plaintiff states that he "was the only employee who was summarily terminated, despite very serious allegations by Terrazas against several other employees including what amounted to fraud and misuse of SCVTA funds." *Id.* Plaintiff further states that "[w]hen general manager Fernandez was hired, Fabela made the inappropriate race-based comment that [Fabela] was personally pleased that a Black and Hispanic woman was hired as GM." *Id.*

However, even assuming that these thin facts could plausibly state a claim for race discrimination, none of these facts appear in Plaintiff's SAC. Accordingly, the Court may not consider them in ruling on Defendants' motion to dismiss. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (explaining that, for purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice"). Considering only the facts alleged in Plaintiff's SAC, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims for racial discrimination

under Title VII and FEHA. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts establishing that Plaintiff was discriminated against on the basis of his race.

**E. Age Discrimination Claims**

Plaintiff's Sixth and Twelfth causes of action allege that SCVTA discriminated against Plaintiff on the basis of Plaintiff's age, in violation of the ADEA and FEHA, respectively. "To establish a prima facie case for age-based discrimination under Title VII and FEHA, a plaintiff must plead that: (1) she was age forty or over; (2) she was qualified for the position or performed the job satisfactorily; (3) she suffered an adverse employment action; and (4) she was replaced by a substantially younger worker with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination to permit an inference of age discrimination." *Fitch*, 2015 WL 6551668, at *5 (internal quotation marks omitted).

Plaintiff's SAC fails to state a claim for age discrimination. Plaintiff's SAC alleges that SCVTA "summarily terminated [Plaintiff], who was over forty years of age at the time of his wrongful discharge," and that SCVTA "terminated [Plaintiff] because of his age." *Id.* ¶ 135. The SAC states that SCVTA "used a specific selection criterion for hiring people under the age of 40 that resulted in [Plaintiff] being terminated," and that this "resulted in [Plaintiff] being discharged and on information and belief being replaced by someone under the age of 40." *Id.* ¶ 136.

These conclusive allegations do not plausibly allege that Plaintiff was terminated on the basis of his age. Although the SAC alleges that SCVTA "used a specific selection criterion for hiring people under the age of 40," the SAC contains no factual allegations regarding what this selection criterion was, let alone how an alleged *hiring* criterion played any role in the *termination* of Plaintiff. *See* SAC ¶¶ 135–36. Moreover, Plaintiff alleges only that Plaintiff is "over the age of 40," and that Plaintiff was "on information and belief [] replaced by someone under the age of 40." *Id.* ¶ 136. These allegations merely recite the elements of an ADEA and FEHA cause of action, and they provide no information regarding the actual age of Plaintiff or the age difference between Plaintiff and his replacement. *See Fitch*, 2015 WL 66551668, at *5 (setting forth the elements of an ADEA and FEHA age discrimination claim). Accordingly, the SAC does not

allege facts that plausibly "giv[e] rise to an inference of age discrimination." *Id.*; *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("In the age-discrimination context, [an inference of discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger.").

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's age discrimination claims. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts establishing that Plaintiff was discriminated against on the basis of his age.

**F. Disability Discrimination Claims**

Plaintiff alleges in Count Seven that SCVTA discriminated against Plaintiff by terminating Plaintiff on the basis of Plaintiff's disability, in violation of the ADA. SAC ¶¶ 147–48. Plaintiff alleges in Count Ten that SCVTA discriminated against Plaintiff by failing to provide Plaintiff with reasonable accommodations for his disability, in violation of FEHA. *Id.* ¶¶ 184–86. In order to state a claim for disability discrimination under the ADA, "Plaintiff must allege that: (1) Plaintiff suffers from a disability; (2) Plaintiff is otherwise qualified to do his job; and (3) Plaintiff was subjected to an adverse employment action because of his disability." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 907 (N.D. Cal. Sept. 9, 2015). "To establish a prima facie case for failure to accommodate [under FEHA], a plaintiff must show: (1) that he suffers from a disability covered by FEHA; (2) that he is otherwise qualified to do his job; and (3) that defendant failed to reasonably accommodate his disability." *Gardner v. Fed. Express Corp.*, 114 F. Supp. 3d 889, 901 (N.D. Cal. July 10, 2015).

Plaintiff's SAC fails to state a claim for disability discrimination under either the ADA or FEHA. The SAC alleges that Plaintiff suffers from "hidradenitis suppurativa." SAC ¶ 183. According to the SAC, Plaintiff "frequently expressed, both physically and verbally, physical pain resulting from his disability while in the presence of [Fabela], during such activities as walking, sitting, and speaking." *Id.* ¶ 32. Plaintiff alleges that his "medical condition substantially limited his ability to sleep, walk, stand, lift, bend, concentrate, tolerate substandard performance by coworkers and perform manual tasks at work and home." *Id.* ¶ 34. Plaintiff asserts conclusively

that Defendants "failed to provide reasonable accommodation for" Plaintiff's disability, and Defendants terminated Plaintiff on the basis of his disability. *Id.*

Significantly, Plaintiff's SAC contains no facts regarding what kind of condition "hidradenitis suppurativa" is, or how this condition limited Plaintiff in any of the ways that Plaintiff conclusively asserts. *See Steiner v. Verizon Wireless*, 2014 WL 202741, at *5 (E.D. Cal. Jan. 17, 2014) (dismissing ADA claim because, in part, the plaintiff failed to allege facts showing "which particular conditions render her disabled and how they substantially limit one or more of her major life activities"). Moreover, Plaintiff's SAC is devoid of any allegation regarding how Plaintiff's disability could have been accommodated in the workplace, or how Plaintiff's alleged disability played any role in Plaintiff's termination. As discussed above, the facts alleged in the SAC concern Plaintiff's posting of the "Anyone But Terrazas For City Council" webpage, and Fabela's firing of Plaintiff in reference to that webpage. *See* SAC ¶ 31. Accordingly, the SAC fails to set forth sufficient factual allegations to state a plausible claim that Defendants failed to offer reasonable accommodations to Plaintiff, or that Defendants terminated Plaintiff on the basis of his disability. *See Steiner*, 2014 WL 202741, at *5 (dismissing ADA claim because "although plaintiff allege[d] that she was terminated due to a disability resulting from a workplace injury, plaintiff fail[ed] to plead sufficient facts" to state a plausible claim).

In Plaintiff's opposition, Plaintiff states that "hidradenitis suppurativa" is a "rare, long-term skin condition characterized by swollen, painful lesions." Pl. Opp. at 26. Plaintiff states that "Fabela had personal knowledge that [Plaintiff] took a day off work every few weeks for treatment of this chronic condition" and that "[e]ven casual observations revealed to [Plaintiff's] co-workers that he suffered daily," had trouble walking, sitting, standing, reaching, etc." *Id.* However, even assuming that these conclusory allegations are sufficient to state an ADA or FEHA claim, the Court may not consider facts raised outside of the complaint in ruling on a 12(b)(6) motion to dismiss. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (explaining that, for purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

27

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

Considering only the facts alleged in Plaintiff's FAC, Plaintiff has not alleged facts that plausibly suggest that Defendants discriminated against Plaintiff on the basis of Plaintiff's disability. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's disability discrimination claims under the ADA and FEHA. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts establishing that Plaintiff was discriminated against on the basis of his disability.

**G. Retaliation for Reporting Race Discrimination Claims**

Plaintiff alleges in Count Eight and Count Thirteen that SCVTA unlawfully fired Plaintiff in retaliation for Plaintiff's report of race discrimination. Plaintiff brings these claims under Title VII and FEHA, respectively. Under either statute, "[t]o state a prima facie case for retaliation, plaintiff must establish: (1) she was engaged in a protected activity; (2) defendant took an adverse employment action; and (3) a causal connection existed between plaintiff's protected activity and defendant's adverse employment action." *Lelaind v. City and Cty. of San Francisco*, 476 F. Supp. 2d 1079, 1094 (N.D. Cal. Sept. 2, 2008).

Plaintiff's FAC fails to set forth sufficient facts to state a plausible retaliation claim under Title VII for FEHA. Plaintiff alleges only that Plaintiff "reported a co-worker's allegations of racial discrimination and inequality by [SCVTA] in the workplace to [Fabela] on or around January, 2015. No effective action was ever taken by [Defendants]." SAC ¶ 159. Other than this allegation, Plaintiff provides no further factual details regarding Plaintiff's report of racial discrimination. Plaintiff does not state who the co-worker was, the circumstances of this discrimination, or how Plaintiff's report of racial discrimination in January 2015 played any role in Plaintiff's termination in June 2015. Again, as discussed above, the facts alleged in the SAC regarding Plaintiff's termination concern Plaintiff's posting of the "Anyone But Terrazas For City Council" webpage, and Fabela's firing of Plaintiff in reference to that webpage. *See* SAC ¶ 31.

Accordingly, Plaintiff has failed to plead factual allegations that, taken as true, plausibly suggest that Plaintiff's termination was "causally connect[ed] to [Plaintiff's] protected activity." *See Lelaind*, 476 F. Supp. 2d at 1094. The Court GRANTS Defendants' motion to dismiss

28

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

Plaintiff's Title VII and FEHA retaliation claims. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts establishing that Plaintiff was terminated in retaliation for Plaintiff's report of race discrimination.

**H. Punitive Damages**

Lastly, Defendants move to dismiss Plaintiff's claim for punitive damages.[6] As an initial matter, Plaintiff "agrees punitive damages are not available as to Defendant SCVTA." Opp. at 28. Accordingly, to the extent the SAC requests punitive damages as to SCVTA, the Court GRANTS with prejudice Defendants' motion to dismiss Plaintiff's claim for punitive damages. *See, e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.")

The Court turns to Defendants' argument that the Court should dismiss Plaintiff's claim for punitive damages as to Fabela. "Punitive damages may be assessed in § 1983 actions 'when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 669 (9th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Defendants contend that the SAC alleges only that Fabela terminated Plaintiff, and termination is a "common employment decision that does not constitute the 'malicious, wanton, or oppressive conduct' necessary to support a claim for punitive[]" damages. Mot. at 25.

Defendants argument is not persuasive. The case upon which Defendants rely, *Buscemi v. McDonnell Douglas Corp.*, 736 F. 2d 1348 (9th Cir. 1984), held only that a plaintiff's allegation that the plaintiff "was fired without good cause" could not "support a tort claim under state law for

[6] Defendants move to strike Plaintiff's claim for damages under Rule 12(f), which authorizes the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, the Ninth Circuit has held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010). Accordingly, the Court construes Defendants' motion to strike as part of Defendants' motion to dismiss under Rule 12(b)(6). *See Consumer Solus. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009) (converting Rule 12(f) motion to strike punitive damage allegations to a motion to dismiss under Rule 12(b)(6)).

29

Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

intentional infliction of emotional distress." *Id.* at 1352. *Buscemi* did not address punitive damages. Contrary to Defendants' assertion, "punitive damages are generally permissible when properly pled in connection with a properly pled tort claim." *Davis v. City of San Jose*, 2014 WL 2859189, at *9 (N.D. Cal. June 20, 2014). "To satisfy the federal pleading standard for punitive damages, a plaintiff 'may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 917 (N.D. Cal. Sept. 9, 2015) (internal quotation marks omitted). Plaintiff's SAC satisfies the federal pleading standard by reciting "a short and plain prayer for punitive damages," *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. Apr. 7, 2015), that alleges that Fabela acted with "intent to injure, constituting oppression, fraud, and malice" in terminating Plaintiff for Plaintiff's exercise of his right to free speech. SAC ¶ 54; *see Alejandro*, 129 F. Supp. 3d at 918 (finding a plaintiff adequately pled punitive damages where the plaintiff alleged "each of the causes of action above were taken with malice, fraud, or oppression, and in reckless disregard for Plaintiff's rights").

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's claim for punitive damages against Fabela in his individual capacity.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss as follows:

- The Court DENIES Defendants' motion to dismiss Plaintiff's claim under § 1983 against Fabela in his individual capacity for First Amendment retaliation.
- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claim under § 1983 against SCVTA for First Amendment retaliation.
- The Court DENIES Defendants' motion to dismiss Plaintiff's claim under California Government Code § 3203.
- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claims under § 1983 against SCVTA for violation of the Fourteenth Amendment. However, to the extent that Plaintiff basis his Fourteenth Amendment Due Process claim on Plaintiff's right to a *Skelly* hearing, the Court GRANTS with prejudice Defendant's motion to dismiss.

30
Case No. 16-CV-04032-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claims for racial discrimination under Title VII and FEHA.

- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claims for age discrimination under the ADEA and FEHA.

- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claims for disability discrimination under the ADA and FEHA.

- The Court GRANTS without prejudice Defendants' motion to dismiss Plaintiff's claims for retaliation for filing a complaint of race discrimination under Title VII and FEHA.

- The Court GRANTS with prejudice Defendants' motion to dismiss Plaintiff's claim for punitive damages against SCVTA.

- The Court DENIES Defendants' motion to dismiss Plaintiff's claim for punitive damages against Fabela in his individual capacity.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified in this order, Plaintiff shall do so within twenty-one (21) days of the date of this order. Failure to meet this deadline, or failure to cure the deficiencies identified in this order, will result in a dismissal with prejudice. Plaintiff may not add new parties or claims without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 30, 2017

Lucy H. Koh

LUCY H. KOH
United States District Judge